## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAR VISION, INC.,** | : | |
| | : | |
| *Plaintiff,* | : | |
| v. | : | **Civil Action No. 2:22-cv-01933-WB** |
| | : | |
| **THE PHILADELPHIA PARKING** | : | |
| **AUTHORITY**, *et al.*, | : | |
| | : | |
| *Defendants*. | : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT BY DEFENDANT, THE PHILADELPHIA PARKING AUTHORITY

**OF COUNSEL**:

Archer & Greiner, P.C.
Three Logan Square
1717 Market Street
Thirty-Fifth Floor
Philadelphia, PA 19103
215-963-3300
Fax:  215-963-9999
pdoran@archerlaw.com
apearl@archerlaw.com

Patrick J. Doran
Amy E. Pearl
*Attorneys for Defendant, The Philadelphia*
*Parking Authority*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .................................................................................................... 1

RELEVANT BACKGROUND ................................................................................ 3

    A.    PPA's Legal Authority to Impound, Tow, and Sell Vehicles........................ 3

    B.    PPA Impounds and Tows Car Vision's Vehicle............................................ 5

    C.    Car Vision Learns PPA Has its Vehicle and Appears in Traffic Court ........ 6

    D.    PPA Obtains Authorization to Sell Car Vision's Vehicle. ........................... 7

PROCEDURAL BACKGROUND............................................................................ 8

ARGUMENT ........................................................................................................... 8

    A.    Standard of Review for Motion to Dismiss for Failure to State a Claim...... 8

    B.    Car Vision's Due Process Claim Fails as a Matter of Law Because the Vehicle Code Provides Reasonable Notice and an Opportunity to be Heard in Connection with the Impoundment and Sale of Vehicles............................... 9

    C.    Car Vision's "<u>Monell</u>" Claims Fail as a Matter of Law Because There Is No Underlying Constitutional Violation and it Has Not Otherwise Alleged a Colorable Claim............................................................................................. 16

    D.    Car Vision's Claim for Attorney's Fees Should be Dismissed. .................. 17

    E.    Car Vision's State Law Conversion Claim Fails as a Matter of Law Because PPA is Immune Under the Pennsylvania Political Subdivision Tort Claims Act. ............................................................................................................... 18

CONCLUSION........................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009)....................................................8

Banks v. Owens, No. 17-5423, 2018 WL 6249709 (E.D. Pa. Nov. 29, 2018),
aff'd, 796 Fed.Appx. 110 (3d Cir. 2019)..........................................................................18

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007).............................8

Berger v. Phila. Parking Auth., 413 F. Supp. 3d 412 (E.D. Pa. 2019).......................6, 10

Blessing Auto Repair, Inc. v. Pennsylvania State Police, No. 20-6569, 2021 WL
3418877 (E.D. Pa. Aug. 5, 2021) ............................................................6, 11, 19

Butler v. City of Phila., No. 11-7891, 2013 WL 5842709 (E.D. Pa. Oct. 31, 2013)....................17

City of Los Angeles v. David, 538 U.S. 715, 123 S.Ct. 1895 (2003)...............................9

City of West Covina v. Perkins, 525 U.S. 234, 119 S.Ct. 678 (1999)....................14, 15

Ke v. Phila. Parking Auth., 831 Fed.Appx. 621 (3d Cir. 2020)...............................9, 13

King v. City of Philadelphia, 654 Fed.Appx. 107 (3d Cir. 2016)........................9, 12, 13

Monell v. Department of Social Services of the City of New York, 436 U.S. 658
(1978)...................................................................................16, 17

Mulholland v. County of Berks, 706 F.3d 227 (3d Cir. 2013) ....................................16

Perazzo v. Reliance Standard Life Ins. Co., No. 00-3342, 2001 WL 1468287
(E.D. Pa. Nov. 15, 2001) .............................................................................18

Phila. Parking Auth. v. Lynch, Nos. 1306 C.D. 2014, 1505 C.D. 2014, 2015 WL
5446765 (Pa.Cmwlth. June 9, 2015) ..........................................................................3

Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405 (3d Cir.), cert. denied, 522 U.S.
977, 118 S.Ct. 435 (1997)..........................................................................................3

Rose v. Walmart Corp., No. 21-4092, 2022 WL 170640 (E.D. Pa. Jan. 19, 2022).......................17

Saukstelis v. City of Chicago, 932 F.2d 1171 (7th Cir. 1991)......................................11

Schott v. Doe, No. 05-1730, 2007 WL 539645 (W.D. Pa. Feb. 15, 2007)....................................6

Shoemaker v. City of Howell, 795 F.3d 553 (6th Cir. 2015) ......................................13

ii

Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir.), cert. denied, 522 U.S. 977, 118 S.Ct. 435 (1997) ..............................................3

Sphere Drake Ins. Co. v. Philadelphia Gas Works, 566 Pa. 541, 782 A.2d 510 (2001)...............................................................................................................................18

Tate v. District of Columbia, 627 F.3d 904 (D.C. Cir. 2010), cert. denied, 563 U.S. 980, 131 S.Ct. 2886 (2011) ..................................................................................13

The Choice is Yours, Inc. v. The Choice is Yours, No. 2:14-cv-01804, 2015 WL 5584302 (E.D. Pa. Sept. 22, 2015) ..........................................................................8

United States v. Budd, 144 U.S. 154, 12 S.Ct. 575 (1892)...........................................14

Wood v. Williams, 568 Fed.Appx. 100 (3d Cir. 2014) ................................................17

**STATUTES AND OTHER AUTHORITIES**

42 Pa.C.S. § 1121 ...........................................................................................................4

42 Pa.C.S. § 1123(a)(9)..................................................................................................4

42 Pa.C.S. § 8541 .........................................................................................................18

42 Pa.C.S. § 8542(a)–(b)..........................................................................................18, 19

42 Pa. C.S. § 8545 ........................................................................................................18

75 Pa.C.S. § 6309 ...........................................................................................................7

75 Pa.C.S. § 6309.2.................................................................................................passim

75 Pa.C.S. § 6310(d) ..............................................................................................5, 7, 10

42 U.S.C. § 1983 ..................................................................................................1, 8, 12, 16

42 U.S.C. § 1988.............................................................................................2, 8, 17, 18

Phila. Code §§ 12-2405 to 12-2406 ...........................................................................3, 9

Phila. Code §§12-2804 to 12-2808 ............................................................................3, 9

Philadelphia County Joint General Court Regulation No. 98-2 ...........................passim

## INTRODUCTION

By Act 93 of 1996, the Pennsylvania Legislature amended the Pennsylvania Vehicle Code to provide for the immobilization and towing of vehicles operated by a person without a valid driver's license, or without valid registration and proof of insurance.  75 Pa.C.S. § 6309.2. This law includes detailed procedures for the operator or owner to recover the vehicle, and explicitly provides that "[a]ny vehicle not recovered . . . may be sold as an unclaimed vehicle." Id. § 6309.2(d)(2).

Defendant, the City of Philadelphia (the "City") adopted its "Live Stop" program to govern the manner in which the Philadelphia Police Department enforces this law.  Defendant, the Philadelphia Parking Authority ("PPA"), is Philadelphia's towing and enforcement agent for the Live Stop program.  Id. § 6309.2(e).  Among the various provisions of the law which uniquely apply to Philadelphia, PPA is required, after it tows a vehicle as a result of a Live Stop, to provide notice by first class mail to the record owner and any lienholder of the towing, storage and location of the vehicle.  Id. § 6309.2(c)(2)(ii).

On October 13, 2020, the Philadelphia Police Department stopped a 2016 Audi A3 ("Vehicle"), owned by plaintiff, Car Vision, Inc. ("Car Vision"), because it was being operated without headlights.  Car Vision had reported the theft of multiple vehicles to the police earlier that day.  Pursuant to the City's Live Stop program, after the police determined that the driver did not have a valid license, PPA towed the Vehicle to an impoundment lot.  On November 10, 2020, as permitted by the Vehicle Code and specifically authorized by an order of the Philadelphia County Court of Common Pleas, PPA sold the Vehicle at public auction.

Car Vision brings this action under 42 U.S.C. § 1983 ("Section 1983"), claiming that PPA and the City violated its constitutional right by selling the Vehicle without due process.  As Car Vision alleges in Paragraph 1 of the Complaint, PPA sold the Vehicle "without giving Car

Vision adequate notice to prevent the sale." Car Vision makes this claim even though it admittedly was aware that PPA had impounded the Vehicle and even though it appeared before the Philadelphia Traffic Court in an effort to recover it. The gist of Car Vision's constitutional tort claim is that after the Traffic Court refused to issue a release order without a police report, PPA sold the Vehicle without giving Car Vision notice, while Car Vision was waiting to receive the report. Car Vision's allegations also suggest an attempt to pin <u>Monell</u> liability on PPA based on some theory that it was deprived of due process by PPA's failure to adequately train or supervise its employees. Car Vision further seeks reasonable attorney's fees under 42 U.S.C. § 1988. In addition to those federal claims, Car Vision brings a state law claim for conversion.

Each of Car Vision's claims is fatally flawed. Car Vision plainly had notice and an opportunity to be heard, dooming its Section 1983 claim. The Vehicle Code required PPA to notify Car Vision that its vehicle had been impounded and would be subject to sale at public auction if it remained unclaimed (which PPA did). The Vehicle Code also afforded Car Vision the opportunity to appear before the Traffic Court to retrieve its vehicle (which Car Vision did). Even accepting the truth of Car Vision's claim that it did not receive prior notice of the sale from PPA, the Constitution does not guarantee ***actual*** notice of state action, only notice "reasonably calculated" to apprise a person of the action against it. The provisions of the Vehicle Code easily satisfy this standard.

Car Vision's <u>Monell</u> claims should likewise be dismissed. Beyond being supported by only conclusory allegations which are insufficient to withstand a motion to dismiss, these claims require an underlying constitutional violation, which Car Vision cannot establish as a matter of law for the reasons described above. Car Vision's claim for reasonable attorney's fees should also be dismissed because Section 1988 does not authorize an independent cause of action, and

Car Vision otherwise does not state viable civil rights claims.  Finally, Car Vision's conversion

claim is unsalvageable because PPA is immune from such claims under the Pennsylvania

Political Subdivision Tort Claims Act.

## RELEVANT BACKGROUND[1]

### A.     PPA's Legal Authority to Impound, Tow, and Sell Vehicles.

Pertinent to this case, Section 6309.2 of the Vehicle Code authorizes the immobilization,

towing and storage of a vehicle operated by an unlicensed driver anywhere in the

Commonwealth. 75 Pa.C.S. § 6309.2(a)(1).  PPA is the towing and enforcement agent for

Philadelphia's Live Stop program, which is authorized by the Vehicle Code.  75 Pa.C.S. §

6309.2(e); see Phila. Parking Auth. v. Lynch, Nos. 1306 C.D. 2014, 1505 C.D. 2014, 2015 WL

5446765, at *1 (Pa.Cmwlth. June 9, 2015); see also 75 Pa.C.S. § 6309.2.

Under the statute, procedures differ depending upon whether the vehicle has just been

immobilized or has been towed and stored.  See 75 Pa.C.S. § 6309.2.  Where, as here, the vehicle

is towed and stored in Philadelphia, PPA is charged with "provid[ing] notice by first class mail,

proof of mailing, of the towing, storage and location of the vehicle to the owner."  Id. §

6309.2(c).[2]  Philadelphia County Joint General Court Regulation No. 98-2 ("Reg. 98-2"), 28 Pa.

B. 3021, which further addresses the procedure for the sale of vehicles impounded for driving

without operating privileges or registration pursuant to Section 6309.2, clarifies the requirements

---

[1] The Relevant Background includes a recitation of the applicable statutes and the factual allegations set forth in Plaintiff's Complaint, which must be taken as true for the purposes of this Motion. See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir.), cert. denied, 522 U.S. 977, 118 S.Ct. 435 (1997). If this Motion is denied in whole or in part, PPA reserves its right to deny Plaintiff's factual allegations.

[2] Section 12-2405(2) of the Philadelphia Traffic Code also requires PPA to send notice of the impoundment.  In relevant part, that section provides "[w]hen a vehicle is towed pursuant to this Section *or other provision of law[,]*" PPA shall provide notice within thirty days of removal or impoundment of a vehicle "to the owner of record of such vehicle, indicating the place to which such vehicle has been removed, the reason for its removal and impounding, the applicable fees, and the possibility that the vehicle will be sold at public auction if not reclaimed within fifteen (15) days of issuance of notice."  12 Phila. Code § 12-2405(2) (emphasis added).

of this notice and provides a sample form notice.  A copy of Reg. 98-2 is attached to this Motion

as Exhibit 1.  Under Reg. 98-2, this impoundment notice must inform the vehicle owner that its

vehicle has been impounded and how it can recover it.  It also requires PPA to explain "that if

the vehicle is not recovered by a stated date, the vehicle will be sold."  Reg. 98-2.  Pursuant to

Reg. 98-2 "[n]otice shall be sent to the addresses on file at the appropriate departments of motor

vehicle by regular mail, which the Court finds to be the most expeditious means, and a

Certificate of Mailing shall be obtained."  Id.

      The form impoundment notice specifically advises that the owner can recover the vehicle

as provided in Section 6309.2 of the Vehicle Code.  Id., Ex. A.  In relevant part, that section

provides that in instances where the impoundment resulted from someone other than the owner

operating the vehicle, the owner may recover it by (1) showing proof of valid registration and

financial responsibility and (2) paying all costs associated with towing and storage and fines

associated with the underlying citation and any other outstanding fines and costs of the owner, or

arranging with the Traffic Court[3] to make those payments.  75 Pa.C.S. § 6309.2.  In Philadelphia,

the Traffic Court by law ***cannot*** order the release of "any vehicle towed and stored pursuant to

this section until provisions are made for payment of all fines and penalties associated with

violations" of local parking regulations or ordinances.  See id. § 6309.2(d)(1.1).  The form notice

attached to Reg. 98-2 apprises the vehicle owner of this process, explaining that "[b]efore you

may recover the vehicle, you must appear in person at the Philadelphia Traffic Court . . . to

resolve any outstanding vehicle registration or operating privilege issues."  Reg. 98-2, Ex. A.

---

[3] By way of brief background, "Traffic Court" or the "Traffic Division" falls within the ambit of the Philadelphia Municipal Court, which has jurisdiction over summary offenses under the Pennsylvania Vehicle Code.  See 42 Pa.C.S. §§ 1121, 1123(a)(9).  The President Judge of the Philadelphia Municipal Court is authorized to appoint hearing officers in cases involving summary offenses under the Pennsylvania Vehicle Code.  Id. § 1127.  The Court of Common Pleas has exclusive jurisdiction over appeals from final orders of minor judiciary like the Municipal Court.  Id. § 932.

The statute plainly provides that if a vehicle is unclaimed for a period of fifteen days after the notice of impoundment is given, PPA may petition the court for an order authorizing PPA to sell the vehicle at public action.  See id. §§ 6309.2(d)(2), 6310(d); see also Reg. 98-2.  After ten days' notice of the sale, the vehicle "shall be sold at a public sale by the Philadelphia Parking Authority."  75 Pa.C.S. § 6310(d).  Again, the form notice explicitly warns the vehicle owner of these consequences.  See Reg. 98-2, Ex. A.  It further notifies the vehicle owner, in all capital letters, "THIS IS YOUR FINAL NOTICE, IF YOU DO NOT RECLAIM THIS VEHICLE IT WILL BE AUCTIONED AS SET FORTH ABOVE AND YOUR OWNERSHIP INTEREST WILL BE EXTINGUISHED AND OWNERSHIP WILL VEST TO THE SUCCESSFUL BIDDER."  Id.

### B.      PPA Impounds and Tows Car Vision's Vehicle.

Car Vision, which is engaged in business as a car dealership, lawfully owned the Vehicle at all relevant times prior to its sale at public auction on November 10, 2020.  ECF No. 1, ¶¶ 9, 11, 12 ("Compl.").  Early on the morning of October 13, 2020, Car Vision reported to the Philadelphia Police Department that a number of cars had been stolen from its lot on Essington Avenue in Philadelphia.  Id. ¶ 10, id. Ex. A.  Among the stolen cars was the Vehicle.  See id. ¶ 11.[4]

Later that evening, Philadelphia police officers pulled over the Vehicle because it was being operated without a headlight, and discovered that the operator, Ahmere Bolden, was unlicensed.  See id. ¶ 11, see also id., Ex. B.  According to Car Vision, the police did not arrest Bolden.  Id.  As confirmed by the Police Department Live Stop Towing Report attached to the

---

[4] The Philadelphia Police Department Complaint or Incident Report dated October 13, 2020, which Car Vision attached to the Complaint as Exhibit "A," states that "multiple vehicles were taken off the lot" and does not specifically identify any individual stolen car.

Complaint as Exhibit B, the police turned the Vehicle over to a PPA Tow Operator, who impounded the Vehicle and took it to PPA's "Lot 7."  Id.

### C.    Car Vision Learns PPA Has its Vehicle and Appears in Traffic Court.

Notwithstanding the fact that Car Vision alleges that "PPA, in violation of §§ 6309 and 6310 [of the Vehicle Code], never issued any 'Impoundment Notice' to Plaintiff," there is no question that Car Vision had actual notice of the impoundment.  See id. ¶¶ 13, 23.[5]  According to Car Vision, on October 19, 2020 – six days after the impoundment – the City notified Car Vision that the Vehicle had been recovered and towed to PPA.  Id. ¶ 13.  The next day, Car Vision sent an employee to PPA to recover the Vehicle.  Id. ¶ 14.  A PPA employee informed Car Vision that, because it was a Live Stop tow, Car Vision would need to obtain a release Order from Traffic Court to recover the vehicle.[6]  Id.  Car Vision alleges it then went to Traffic Court and requested a release order.  Id. ¶ 15.  The Traffic Court refused to issue such a release order; Car Vision claims "on information and belief" that the Traffic Court stated that "a police report was required to obtain a release Order to establish that the vehicle was stolen."  Id.

Car Vision then attempted to obtain the police report, but the City informed it that it could only do so by applying via mail.  Id. ¶ 16.  Car Vision avers that "[t]he police report application form states, 'please allow ten to twelve weeks . . . before making inquiries.'"  Id.

---

[5] While not necessary to grant PPA's Motion, consistent with its obligations under the Vehicle Code, Traffic Code, and Reg. 98-2, PPA did, in fact, mail an Impoundment Notice to Car Vision on October 14, 2020.  Proof of notice to the owner and any lienholder of the vehicle is a prerequisite to the Philadelphia County Court of Common Pleas entering an order authorizing the sale of the vehicle at public auction – which it ultimately did on November 10, 2020.  A copy of the Impoundment Notice is attached to this Motion as Exhibit 2.  In the context of this Motion to Dismiss, this Court may take judicial notice of these ***matters of public record***.  Blessing Auto Repair, Inc. v. Pennsylvania State Police, No. 20-6569, 2021 WL 3418877, at *2 (E.D. Pa. Aug. 5, 2021); Berger v. Phila. Parking Auth., 413 F. Supp. 3d 412, 419 (E.D. Pa. 2019); Schott v. Doe, No. 05-1730, 2007 WL 539645, at *4 (W.D. Pa. Feb. 15, 2007).

[6] The Vehicle Code explicitly provides that, in Philadelphia, the Traffic Court "shall not issue an order for the release of a vehicle [towed under Section 6309.2] until provisions are made for payment of all fines and penalties."  75 Pa.C.S. § 6309.2(d)(1.1).

(alteration in original).  Car Vision submitted the application form "on or about October 27, 2020."[7]  Id.

According to the Complaint, Car Vision did nothing else until it contacted PPA on November 18 and learned that the Vehicle had already been sold at public auction.  Id. ¶ 17.

### D.    PPA Obtains Authorization to Sell Car Vision's Vehicle.

The facts surrounding the public auction of the Vehicle are matters of public record.  As the Vehicle had not been recovered, on or about October 27, 2020, as required by Sections 6309.2 and 6310 of the Vehicle Code, PPA commenced an action in the Philadelphia County Court of Common Pleas, docketed at In re Petition of Philadelphia Parking Authority, October Term, 2020, No. 1846 (the "State Court Auction Proceeding"), which sought judicial authorization for the public auction of a number of impounded vehicles, including Car Vision's Vehicle.  Satisfied that PPA sent the appropriate notices to the owners of the vehicles subject to the public auction and that those owners did not satisfy the requirements under 75 Pa.C.S. §§ 6309 and 6309.2, the Court entered an order authorizing PPA to sell those vehicles at public auction on November 10, 2020.  A copy of this Order is attached to this Motion as Exhibit 3.

Consistent with its obligation to provide notice of the auction under 75 Pa.C.S. § 6310(d) and as required by the October 27 Order, PPA mailed a notice of the Order to Car Vision the next day.  A copy of this Notice is attached to this Motion as Exhibit 4.  On November 4, 5 and 6, PPA also publicly advertised the auction in a newspaper, with links to the complete list of vehicles being sold.   A copy of an affidavit confirming this advertisement is attached to this Motion as Exhibit 5.

---

[7] A copy of the police report application is attached to Car Vision's Complaint as Exhibit C.  Contrary to Car Vision's averment in Paragraph 16, it appears that the application was not submitted until *June 4, 2021*, long after the Vehicle was sold at public auction on *November 10, 2020*.

On November 10, 2020 PPA sold Car Vision's Vehicle at public auction.  A copy of the Order confirming the sale and extinguishing Car Vision's title is attached to this Motion as Exhibit 6.  According to the Complaint, Car Vision contacted PPA to ask about the return of the vehicle on November 18, 2020, over a week after the auction.  Compl. ¶ 17.  The Court entered a final order in the State Court Auction Proceeding dated December 14, 2020.  See Def.'s Mot. to Dismiss, Ex. 6.[8]

## PROCEDURAL BACKGROUND

Plaintiff filed its Complaint in this Court on May 17, 2022.  ECF No. 1.  The Complaint purports to state three claims.  In Count I, Plaintiff brings a claim against the City and PPA pursuant to 42 U.S.C. § 1983 for violations of its constitutional rights under the Fourth and Fourteenth Amendments.  Id. ¶¶ 29-35.  In Count II, Plaintiff brings a state law claim for conversion.  Id. ¶¶ 36-44.  Plaintiff's final count is for reasonable attorney's fees pursuant to 42 U.S.C. § 1988.  Id. ¶¶ 45-47.  On May 19, 2022, Plaintiff requested a waiver of service of summons, which counsel for PPA executed on May 31, 2022.  ECF No. 4.  PPA now moves to dismiss this action.

## ARGUMENT

**A.      Standard of Review for Motion to Dismiss for Failure to State a Claim.**

The "plausibility" pleading standard derived from Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007), as summarized in The Choice is Yours, Inc. v. The Choice is Yours, No. 2:14-cv-01804, 2015 WL 5584302, *2-3 (E.D. Pa. Sept. 22, 2015), need not be belabored here.

---

[8] PPA mailed notice of this final order to Car Vision two days later.  A copy of this notice is attached to this Motion as Exhibit 7.

**B.      Car Vision's Due Process Claim Fails as a Matter of Law Because the Vehicle Code Provides Reasonable Notice and an Opportunity to be Heard in Connection with the Impoundment and Sale of Vehicles.**

Stripped of its conclusory labels and allegations, the gravamen of Car Vision's Complaint is a procedural due process claim arising from PPA's sale of its Vehicle "without giving [it] adequate notice to prevent the sale."  Compl. ¶ 1; see also id. ¶¶ 23, 24.  Because the Vehicle Code provided Car Vision with ample notice and an opportunity to be heard in connection with the impoundment and sale of the Vehicle, this Court should dismiss this claim as a matter of law.

Procedural due process is the "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" City of Los Angeles v. David, 538 U.S. 715, 717, 123 S.Ct. 1895 (2003) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).  Considering comparable provisions of the Philadelphia Traffic Code – which, like the Pennsylvania Vehicle Code provisions at issue here, authorize impoundment and auction of vehicles following notice to the vehicle owner[9] – the Third Circuit has held that those provisions "provide[] ample notice and multiple opportunities for both administrative agency and state court review . . . [and thus] satisfy the requirements of due process." King v. City of Philadelphia, 654 Fed.Appx. 107, 111 (3d Cir. 2016).  Since then, several courts within this circuit have reached the same conclusion in similar constitutional challenges to the Traffic Code.  See, e.g., Ke v. Phila. Parking Auth., 831 Fed.Appx. 621 (3d Cir. 2020) (affirming the dismissal of procedural due process claim on failure to state a claim grounds where car owner "received all the notice and process he was due; he received a notice on his windshield with a number to call for information about the boot, and he

---

[9] In short, the Philadelphia Traffic Code authorizes PPA to immobilize and impound vehicles with three or more delinquent parking, red light camera and/or speed camera violations and permits the auction of those vehicles to satisfy the outstanding tickets. 12 Phila. Code §§ 12-2405 to 12-2406, 12-2804 to 12-2808.  The Traffic Code requires notice before and after a car is immobilized or impounded, and affords the owner the ability to request a hearing relating to the impoundment. Id. §§ 12-2405, 12-2406.

had the opportunity to contest the fine and underlying tickets in a post-deprivation hearing"); <u>Berger</u>, 413 F. Supp. 3d at 419 (dismissing constitutional tort claims, including due process claim, predicated on impoundment and sale of vehicle under Traffic Code because "[t]he Commonwealth's and City's laws afforded [plaintiff] many opportunities to challenge his car's towing . . . [and] "[t]he City and Parking Authority . . . provided ample due process at each stage of this graduated forfeiture procedure").

Those decisions warrant the same conclusion here: the Vehicle Code affords a vehicle owner sufficient due process following the vehicle's impoundment and prior to its auction under the Live Stop program.  Like the notice provisions of the Traffic Code this Court has already deemed constitutional, the notice provisions of the Vehicle Code, in conjunction with Reg. 98-2, require PPA to notify the vehicle's owner that its vehicle has been impounded and that it has the opportunity to recover it in Traffic Court prior to any auction.  <u>See</u> 75 Pa.C.S. §§ 6309.2(d)(2), 6310(d); Reg. 98-2.  Only after the vehicle remains unclaimed for fifteen days following the notice of impoundment can PPA petition for the sale of the vehicle.  75 Pa.C.S. § 6310(d).  The Vehicle Code, the Traffic Code, and Philadelphia County Joint General Court Regulation No. 98-2 all require notice of the sale as a prerequisite to the auction. 75 Pa.C.S. § 6310(d), 12 Phila. Code. 12-2405(3), Reg. 98-2.  The Philadelphia County Court of Common Pleas would not have entered its Order authorizing the auction of the Vehicle if it was not satisfied PPA provided ample notice to Car Vision.  PPA did so by, <u>inter alia</u>, mailing various notices to Car Vision and publishing notice of the sale in the Philadelphia Tribune.  Def.'s Mot. to Dismiss, Exs. 2, 4, 5.

Car Vision's allegation that it did not ***actually receive*** notice of the auction until after the Vehicle was sold, while demonstrably false, does not change the fact that it was afforded due process.  It is well established that ***the Due Process Clause does not guarantee actual notice***.

See <u>Saukstelis v. City of Chicago</u>, 932 F.2d 1171, 1173 (7th Cir. 1991) ("Mail to the registered owner of the car, at the address in the state's files – an address the owner is supposed to keep current – is reasonably calculated to produce actual knowledge.").

Less than one year ago, in <u>Blessing Auto Repair, Inc.</u>, this Court dismissed a due process claim against PPA based on similar allegations of a lack of notice.  There, plaintiff alleged that the Pennsylvania State Police seized his vehicle in connection with an investigation, and directed PPA to remove the vehicle from his business property.  2021 WL 3418877 at *1.  Even though the plaintiff claimed he **never** received notice of the auction until **after** the vehicle had already been sold, District Judge Joyner dismissed any due process claim against PPA in light of the comparable notice provisions of the Traffic Code, concluding that "[e]ven if [the plaintiff] did not receive the mailed notices until after his vehicle was sold, he was still afforded due process because public notice is sufficient."  <u>Id.</u> at *4 (quoting <u>Mullane v. Cent. Hanover Bank & Tr. Co.</u>, 339 U.S. 306, 314-15, 70 S.Ct. 652, 657 (1950)).

The case for dismissal here is even more compelling than in <u>Blessing</u>.  As in <u>Blessing</u>, Car Vision contends that it did not receive any notice of the auction, including the petition filed by PPA for authorization to sell its Vehicle.  Unlike the plaintiff in <u>Blessing</u>, Car Vision actually appeared before the Philadelphia Traffic Court in an effort to recover its Vehicle.  <u>Compare</u> <u>id.</u> at *1, <u>with</u> Compl. ¶¶ 13-15.  PPA mailed Car Vision similar notices here to those it mailed to the plaintiff in <u>Blessing</u>.  <u>See</u> Def.'s Mot. to Dismiss, Exs. 2, 4, 7.  PPA also published notice in the Philadelphia Tribune on November 4, 5 and 6 advising of the upcoming auction.  <u>Id.</u>, Ex. 5. These facts demonstrate that Car Vision received all the process it was due, even assuming it never received actual notice.  The Court's rationale in <u>Blessing</u> dictates the dismissal of Car Vision's due process claim.

That PPA sold the Vehicle while Car Vision was waiting for the police report to arrive does not give rise to a constitutional tort claim.  Put differently, even if the Vehicle Code required PPA to wait until an owner obtains a police report (which it does not), PPA's violation of the Vehicle Code would not amount to a violation of the owner's due process rights.  As a general rule, "violations of state or municipal law do not, standing alone, necessarily state constitutional claims under 42 U.S.C. § 1983."  King, 654 Fed.Appx. at 111 (citing McMullen v. Maple Shade Twp., 643 F.3d 96, 99-100 (3d Cir. 2011)).  Consequently, this Court has found that incorrect readings or improper enforcement of parking violations do not deprive a party of the procedural safeguards otherwise available to it in the Traffic Code.  See id.  The procedural safeguards that exists in the Traffic Code similarly exist in the Vehicle Code.  Merely by virtue of the Vehicle Code, Car Vision had notice that its Vehicle would be sold at public auction if it remained unclaimed.  The Vehicle Code – as well as the notices PPA provided pursuant to it – detailed the manner in which Car Vision could recover the Vehicle.  Car Vision was further entitled to appeal any order of the Traffic Court or file a lawsuit to stay the sale of the vehicle.  It simply failed to do so.

Underscoring this point, Car Vision would have no valid due process claim even to the extent the Complaint could be construed as alleging that PPA and/or the Traffic Court misinformed Car Vision about the manner in which it could retrieve the Vehicle.  This is illustrated by the Third Circuit's decision in Ke v. Philadelphia Parking Authority, in which the plaintiff alleged that PPA violated his constitutional due process rights by not only booting his car for delinquent parking tickets which he had never previously received, but also by tricking him into paying the outstanding fines by falsely telling him that was the only way to retrieve the car, rather than advising him of his right to request a hearing.  The Third Circuit affirmed the

12

district court's dismissal of this due process claim, noting that the plaintiff "received all the notice and process he was due" since, under the applicable Traffic Code provisions, "he had the opportunity to contest the fine and underlying tickets in a post-deprivation hearing but he chose not to."  831 Fed.Appx. at 622-23.  The Third Circuit clarified that dismissal was appropriate "despite [plaintiff's] allegations that PPA employees misled him and failed to comply with their procedures."  Id. at 623, n.4.

In the later regard, the Third Circuit cited Tate v. District of Columbia, 627 F.3d 904 (D.C. Cir. 2010), cert. denied, 563 U.S. 980, 131 S.Ct. 2886 (2011) in which plaintiff ("Tate") alleged that after her vehicle was impounded for delinquent parking tickets, District of Columbia officials told her she had until June 7, 2002 to reclaim the vehicle.  Tate claimed that when she attempted to recover the vehicle on that date, she learned it had been sold at a public auction three days prior on June 4, 2002.  The D.C. Circuit found that these allegations, even if true, could not establish a valid due process claim:

> **That the District may have misstated the auction date or violated its own statutory notice requirement** does not mean that it deprived Tate of the process due under the Fifth Amendment. "[T]he fact of a state law violation does not resolve whether a plaintiff has been deprived of due process." . . . "The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." . . . Tate had meaningful notice of her infractions and a series of hearings to contest them, culminating in the hearing on May 29, 2002, which she requested for the specific purpose of challenging the sale of her vehicle at auction.  **If the District subsequently sold it prematurely, that fact may well give rise to a common law tort under D.C. law but it did not deprive her of the only process due** — namely, timely notice and a hearing. Tate does not challenge the adequacy of the administrative hearings themselves.

627 F.3d at 908 (citations omitted) (first quoting Barwood, Inc. v. District of Columbia, 202 F.3d 290, 294 (D.C. Cir. 2000); then quoting Mathews, 424 U.S. at 333).  See also Shoemaker v. City of Howell, 795 F.3d 553 (6th Cir. 2015) (holding that "[a]lthough the City failed to fully comply with its own Ordinance, such a failure 'does not ... automatically translate into a deprivation of procedural due process under the United States Constitution'"); King, 654 Fed.Appx. at 111 (3d

(noting that PPA's "allegedly incorrect reading or improper enforcement of certain parking prohibitions did not deprive [plaintiff] of [the] procedural safeguards [in the Traffic Code]").

It also bears repeated emphasis that Car Vision **admits** that it was aware of the impoundment of the vehicle and that PPA had possession of it. It failed to comply with the provisions of the Vehicle Code detailing the manner in which it could recover the Vehicle by appearing in Traffic Court with the required documentation and paying all outstanding fees. Car Vision's ignorance of these provisions cannot predicate a valid due process claim.

"[E]very man is presumed to know the law." United States v. Budd, 144 U.S. 154, 163, 12 S.Ct. 575, 578, (1892). Applying this elemental principle here, neither PPA nor the City had any duty to explain the law to Car Vision following the impoundment of its vehicle. To illustrate, in City of West Covina v. Perkins, 525 U.S. 234, 119 S.Ct. 678 (1999), city police officers seized a number of items of evidence from the home of a man ("Perkins"), pursuant to an investigation into a former boarder there. At the conclusion of the search, the officers left Perkins a form stating that certain items had been seized pursuant to a search warrant, and that if Perkins wanted additional information, he should call Detectives Ferrari or Melnyk. Not long after the search, the plaintiff called Detective Ferrari, and was told that he needed to obtain a court order to retrieve the seized property. About a month later, Perkins went to the municipal court to speak to the judge who authorized the warrant. Perkins was told that judge was on vacation, and when Perkins tried to have another judge release his property, was told that the court "had nothing" under Perkins' name. Thereafter, Perkins brought suit, arguing in part that the failure to return his property violated his due process rights.

The district court found that the remedies provided to Perkins as established by state law satisfied due process, and granted summary judgment for the defendants. On appeal, the Ninth Circuit also found that the state statutory remedies satisfied due process, but found that

14

defendants violated Perkins' due process rights by failing to give him notice of those procedures. Reversing the Ninth Circuit, the Supreme Court unanimously found[10] that while due process required the city to provide Perkins notice that his property was seized, it had no independent duty to inform him of the procedures for its retrieval:

> No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law. ***Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him.*** The City need not take other steps to inform him of his options. Cf. Reetz v. Michigan, 188 U.S. 505, 509, 23 S.Ct. 390, 47 L.Ed. 563 (1903) (holding that a statute fixing the time and place of meetings of a medical licensing board provided license applicants adequate notice of the procedure for obtaining a hearing on their applications because: "When a statute fixes the time and place of meeting of any board or tribunal, no special notice to parties interested is required. The statute is itself sufficient notice"); Atkins v. Parker, 472 U.S. 115, 131, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) (noting that "[t]he entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny"). ***In prior cases in which we have held that postdeprivation state-law remedies were sufficient to satisfy the demands of due process and the laws were public and available, we have not concluded that the State must provide further information about those procedures***. See, e.g., Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

City of West Covina, 525 U.S. at 240 (emphasis added).

If Car Vision has some quarrel with what the Traffic Court told it, or the procedure to retrieve its Vehicle, that is a matter of state rather than federal law. Were that not the case, federal courts would be required to adjudicate those details under the guise of vindicating constitutional due process rights. This is not the law. Car Vision could have turned to publicly

---

[10] Seven justices joined Justice Kennedy's opinion for the majority. Justices Thomas and Scalia concurred in the judgment, but agreed with the majority that "the Due Process Clause does not compel the city to provide respondents with detailed notice of state-law post-deprivation remedies." See City of West Covina, 525 U.S. at 246 (Thomas. J., concurring).

available sources that detail the manner in which it could have retrieved its vehicle and followed those procedures.  It failed to do so.

Even if all of Car Vision's allegations are true, its Section 1983 claim should be dismissed.

   C.    **Car Vision's "Monell" Claims Fail as a Matter of Law Because There Is No Underlying Constitutional Violation and it Has Not Otherwise Alleged a Colorable Claim.**

Though not explicitly stated, certain paragraphs of Car Vision's Complaint claim suggest that it seeks to impose municipal liability upon PPA under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).  See Compl. ¶ 30 ("Acting under color of State law, Defendants negligently failed to instruct, supervise, control and discipline their employees of their duties to refrain from . . . ."); id. ¶ 39 ("Upon information and belief, it was the policy and custom of Defendants, PPA and the City, to inadequately supervise and train its agents . . . .").  Any attempt to impose municipal liability on PPA under Monell should be rejected.

In order to state a claim for municipal liability under Monell, a plaintiff must establish: (1) a constitutionally protected right has been violated and (2) the alleged violation resulted from a municipal policy, custom or practice of deliberate indifference to the rights of citizens.  Monell, 436 U.S. at 694-695.  "[C]ourts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." Mulholland v. County of Berks, 706 F.3d 227, 237 (3d Cir. 2013). (citations and quotations omitted).  A policy occurs when a decision-maker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law."  Id.

16

Car Vision's purported <u>Monell</u> claim fails at the first step because it cannot establish that a constitutional protected right has been violated for all the reasons set forth above.  But even assuming it could, Car Vision simply parrots the legal standard for <u>Monell</u> liability without pleading any underlying facts.  Needless to say, these general and conclusory allegations are insufficient to withstand a motion to dismiss.  <u>See</u>, <u>e.g.</u>, <u>Wood v. Williams</u>, 568 Fed.Appx. 100, 104-06 (3d Cir. 2014) (affirming dismissal of <u>Monell</u> claim where "complaint made conclusory and general claims of failure to screen, train, or supervise employees to avoid constitutional violations" because such allegations fail to meet Rule 8's pleading requirements and "fail[] to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability" (quoting  <u>McTernan v. City of York</u>, 564 F.3d 636, 658-59 (3d Cir. 2009))); <u>Butler v. City of Phila.</u>, No. 11-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013) (granting motion to dismiss because the "plaintiff's claims amount to a mere recitation of the required elements required to bring forth a <u>Monell</u> claim and are insufficient to survive a motion to dismiss").

### D.      Car Vision's Claim for Attorney's Fees Should be Dismissed.

Car Vision's final federal claim is a claim for reasonable attorney's fees pursuant to 42 U.S.C. § 1988, which should be dismissed because Section 1988 does not authorize an independent cause of action and Car Vision otherwise fails to allege a viable civil rights claim.

Section 1988(b) provides in relevant part that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b)."  Courts routinely find Section 1988 does not create an independent federal cause of action and dismiss those claims where, as here, a plaintiff fails to plead another viable civil rights claim.  <u>See</u>, <u>e.g.</u>, <u>Rose v. Walmart Corp.</u>, No. 21-4092, 2022 WL 170640, at *5 (E.D. Pa. Jan. 19,

2022) (explaining that the plaintiff's "attempt to bring a claim pursuant to § 1988 in this case fails because § 1988 does not authorize an independent cause of action" and dismissing Section 1988 claim with prejudice because the plaintiff failed to allege a plausible civil rights claim); Banks v. Owens, No. 17-5423, 2018 WL 6249709, at *6 (E.D. Pa. Nov. 29, 2018), aff'd, 796 Fed.Appx. 110 (3d Cir. 2019) (holding that Section 1988 "does not confer an independent cause of action" and consequently "in the absence of another, viable civil rights claim, [the plaintiff] may not sue for a violation of Section 1988 alone").  Because Section 1988 does not authorize an independent cause of action and Car Vision fails to assert a viable Section 1983 claim, its standalone claim for reasonable attorney's fees under Section 1988 should be dismissed.

### E.   Car Vision's State Law Conversion Claim Fails as a Matter of Law Because PPA is Immune Under the Pennsylvania Political Subdivision Tort Claims Act.

On its face, Count II of Car Vision's Complaint is a claim for "Conversion (Pursuant to State Law)."  Compl. at 9.  Any claim for conversion should be dismissed because PPA is immune from such a claim under the Pennsylvania Political Subdivisions Tort Claims Act ("PSTCA").

The PSTCA provides blanket immunity to local agencies and their employees.[11]  42 Pa.C.S. §§ 8541, 8545.  "The overall purpose of the Tort Claims Act . . . is to limit governmental exposure to tort liability for its acts."  Sphere Drake Ins. Co. v. Philadelphia Gas Works, 566 Pa. 541, 782 A.2d 510, 515 (2001).  This immunity is abrogated only where (1) the damages sought are recoverable under common law or statute, (2) the injury was caused by the *negligent* acts of the agency or employee, *and* (3) the injury occurs as a result of an act which falls within one of nine categories.  42 Pa.C.S. § 8542(a)–(b). The nine categories are: (1) operation of a motor

---

[11] "It is well settled that PPA is a 'local agency' within the meaning of the Tort Claims Act."  Perazzo v. Reliance Standard Life Ins. Co., No. 00-3342, 2001 WL 1468287, *7 (E.D. Pa. Nov. 15, 2001) (collecting cases).

vehicle; (2) care, custody, and control of personal property; (3) care, custody, and control of real property, or (4) care, custody, and control of animals; (5) trees, traffic controls, and street lighting; (6) utility service facilities; (7) streets; (8) sidewalk; and (9) sexual abuse.  42 Pa. C.S. § 8542(b).

Just last year, this Court held that PPA is immune from conversion claims under the PTSCA and, accordingly, dismissed that cause of action for failure to state a claim.  See Blessing Auto Repair, Inc., 2021 WL 3418877 at *6.  This Court should do the same here.

## CONCLUSION

For these reasons, Defendant, the Philadelphia Parking Authority, respectfully requests that the Court grant its Motion and dismiss Plaintiff's Complaint in its entirety as to it.

Respectfully submitted,

**OF COUNSEL**:
Archer & Greiner, P.C.
Three Logan Square
1717 Market Street
Suite 3500
Philadelphia, PA 19103
215-963-3300
Fax:  215-963-9999
pdoran@archerlaw.com
apearl@archerlaw.com

/s/ Patrick J. Doran_____
Patrick J. Doran
Amy E. Pearl
  *Attorneys for Defendant,*
  *Philadelphia Parking Authority*

225104397v9

19